# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 19-cv-02842-SKC

JONATHAN KEYWORTH,

       Plaintiff,

v.

LOWE'S COMPANIES, INC.[1]

       Defendant.

---

## MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM

---

[1] Lowe's Companies, Inc. has been incorrectly named as the Defendant in this case.  Lowe's Home Centers, LLC employed Plaintiff Jonathan Keyworth and all other store employees and thus is the proper Defendant in this case.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF UNDISPUTED FACTS ..........................................................1

        A.      Keyworth's Employment History and Failure to Meet Basic Expectations. ...........1

        B.      Keyworth Files "Unsubstantiated" Internal Complaint After Not Being
                Selected for ASM Position in a Different Market. ...................................................6

        C.      Keyworth is Placed on Performance Improvement Plan and Does Not
                Meet Expectations...................................................................................................7

III.    LEGAL FRAMEWORK ........................................................................................10

IV.     ARGUMENT...........................................................................................................11

        A.      Keyworth Cannot Establish a Prima Facie Case of Discrimination. .....................11

        B.      Lowe's Had a Legitimate, Non-Discriminatory Basis for Its Decisions and
                the Decision was Not Pretextual. ..........................................................................13

        C.      Keyworth Cannot Demonstrate a Causal Connection Between the
                Employee's Action and the Employer's Adverse Action, Nor Can He
                Demonstrate Lowe's Legitimate Reason for Discharge was Pretext for
                Retaliation. ..........................................................................................................16

V.      CONCLUSION.......................................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa County, Okla.*,
    232 Fed. Appx. 765 (10th Cir. 2007)(unpublished)................................................12

*Barlow v. C.R. England, Inc.*,
    703 F.3d 497 (10th Cir. 2012) ............................................................................12

*Branson v. Price River Coal Co.*,
    853 F.2d 768 (10th Cir. 1988) ............................................................................11

*Dewitt v. S.W. Bell Tel. Co.*,
    845 F.3d 1299 (10th Cir. 2017) ......................................................10, 11, 13, 15

*E.E.O.C. v. C.R. Eng., Inc.*,
    644 F.3d 1028 (10th Cir. 2011) ..........................................................................11

*Hysten v. Burlington N. and Santa Fe Ry. Co.*,
    296 F.3d 1177 (10th Cir. 2002) ......................................................................16, 17

*Mawson  v. U.S. W. Bus Resources, Inc.*,
    23 F. Supp. 2d at 1213 (D. Colo. 1998)....................................................10, 11, 18

*McDonnell-Douglas Corp. v. Green*,
    411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed 2d 668 1973.........................................10, 11

*Morgan v. Hilti, Inc.*,
    108 F.3d 1319 (10th Cir. 1997) .............................................................. passim

*Nealey v. Water Dist. No. 1 of Johnson County*,
    324 Fed. Appx. 744 (10th Cir. 2009)(unpublished)................................................15

*Oglesby v. Hy-Vee, Inc.*,
    214 Fed. Appx. 829 (10th Cir. 2007)(unpublished)................................................14

*Randle v. City of Aurora*,
    69 F.3d 441 (10th Cir. 1995) ............................................................................11

*Simmons v. Sykes Enters, Inc.*,
    647 F.3d 943 (10th Cir. 2011) ............................................................................15

*Vinez v. Sky Chefs, Inc.*,
    658 Fed. Appx. 390 (10th Cir. 2016)(unpublished)................................................12

## STATUTES

ADA (Americans With Disabilities Act of 1990)..........................................................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 56...........................................................................................................................1

Fed. R. Civ. P. 56(a) ....................................................................................................................10

Fed. R. Civ. P. 56(c) ....................................................................................................................10

Defendant, Lowe's Companies, Inc., ("Lowe's"), through its counsel, hereby submits this Memorandum in Support of Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I.      INTRODUCTION

Jonathan Keyworth has alleged causes of action for discrimination and retaliation. He alleges that he was discriminated against when not selected for an ASM position in a different market, and when he was later discharged.  Both employment decisions however were based solely on Keyworth's performance. Keyworth was consistently unavailable for his team and on multiple occasions was found sleeping on the job or watching a movie when he should have been working. Moreover, Keyworth consistently did not meet sales performance expectations.

Keyworth cannot establish prima facie cases of discrimination or retaliation because he cannot show a discriminatory or retaliatory motive.  And, Lowe's had a legitimate, non-discriminatory and non-pretexual reason for its employment decisions based on Keyworth's below-par performance.  Clearly, an employer should be permitted to discharge an employee who is repeatedly sleeping at work, failing to meet expectations, not showing up for his teammates and whose performance is impacting the effectiveness of the store.  For these reasons, based on the undisputed facts, the Court should grant Lowe's summary judgment.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.  Keyworth's Employment History and Failure to Meet Basic Expectations.

Keyworth was hired as Assistant Store Manager ("ASM") in Renton, Washington in November 2012.  Statement of Undisputed Material Facts ("SUMF"), ¶ 1. A year later he transferred to an ASM position in Westminster, Colorado and transferred three years later to Arvada, Colorado in an ASM of sales position.  SUMF, ¶ 2. Shortly after being transferred to the Arvada, Colorado store, coworkers began submitting complaints about Keyworth to store management and human resources. SUMF, ¶ 3.

On January 3, 2018, a female employee contacted the store's Human Resource Manager, Steven Joyce regarding concerns with Keyworth's behavior. SUMF ¶ 4. The employee reported that Keyworth was emotional, acting odd and tried to gift her jewelry, which made her feel uncomfortable. *Id.* On January 12, 2018, human resources received three additional complaints about Keyworth. SUMF ¶ 5. All three employees reported that he smelled of alcohol or was acting intoxicated while at work. SUMF ¶¶ 7-9. Also, among the three complaints were reports that Keyworth was rude to an associate seeking assistance, was not supporting certain areas of the store, and was found sleeping in offices on multiple occasions. *Id.*

Joyce and Area Human Resource Manager Chris Hernandez met with Keyworth on or about January 15, 2018 to discuss the concerns they received regarding his behavior and to offer him assistance. SUMF, ¶ 9. Keyworth denied that he was intoxicated and/or sleeping during his shift. SUMF, ¶ 10. Keyworth told Hernandez and Joyce that he appeared intoxicated because of medication he was taking and smelled like alcohol because he chewed nicotine gum. SUMF, ¶ 11. Keyworth assured Joyce and Hernandez that he did not need assistance or treatment. SUMF ¶ 12.

Shortly after the meeting, Keyworth applied for and received a leave of absence, which he was on from January 26, 2018 through February 9, 2018. SUMF, ¶ 13. When he returned to work, he sought and was granted a workplace accommodation for a condition called hypoxemia which impacted his breathing. SUMF, ¶ 14. Specifically, Keyworth was permitted to sit 15-20 minutes per hour while performing his job duties. SUMF, ¶ 15. Keyworth understood that, as a result of his accommodation, he was permitted to take a break from standing or walking, but that he was still required to complete work from a seated position during the accommodation break. SUMF, ¶ 16.

2

In February 2018, Keyworth was required to present at the ASM Sales Summit his plan to drive sales in the upcoming months. SUMF, ¶ 17. At the presentation, Keyworth appeared unprepared, did not communicate his plan effectively, and did not present a specific plan as to how he would help drive sales. SUMF, ¶ 18. District Manager Ben Stewart saw the performance and commented to Store Manager Hall that Keyworth struggled during his presentation. SUMF, ¶ 19. Hall provided Keyworth this feedback.  SUMF, ¶ 20.

In June 2018, Keyworth's coworkers submitted additional complaints regarding his behavior. On June 6, 2018, Back End Support Manager Tonya Crane submitted a statement to human resources, by email, which reported that she found Keyworth in the loss prevention office, with the lights off and the motion sensor deactivated. SUMF, ¶ 21. Crane reported Keyworth appeared to be sleeping in the office. *Id*. Around the same time, human resources also received complaints from Department Manager Pete Hicks and ASM Vince McMenus that Keyworth was spending significant time in the loss prevention office. SUMF, ¶ 22.

Several days later, on June 13, 2018, a fellow ASM McMenus submitted a written complaint to human resources regarding Keyworth's behavior. SUMF, ¶ 23. McMenus reported that the store was attempting to locate Keyworth to investigate a potential theft in the store's parking lot. SUMF, ¶ 24. After calling Keyworth's phone, which had a busy signal, and paging Keyworth over the store's intercom system, McMenus went into the loss prevention room to review the video footage of the parking lot. SUMF, ¶¶ 24-25. Again, the lights in the loss prevention office were off, and were not activated by the motion sensor. SUMF, ¶ 26. McMenus found Keyworth "slumped over" and "sleeping at the desk with the stores video feed on the monitors and a video playing on his phone."  SUMF, ¶ 27.  McMenus reported that he woke Keyworth from his slumber.  *Id*.

Another employee, Jeremiah Foco, submitted a statement regarding Keyworth's June 13, 2018 behavior.  SUMF, ¶ 28.  He reported that "like usual" Keyworth "disappeared from his duties on the floor" and went into the loss prevention office around 8:30 a.m.  *Id.*  After a customer reported a theft in the parking lot around 9:30 a.m., Foco attempted to contact Keyworth by phone and page.  SUMF, ¶ 29.  When Keyworth was unreachable, Foco contacted McMenus for help and McMenus located Keyworth in the loss prevention office. SUMF, ¶ 30. Foco reported that Keyworth then took a two-hour lunch, which Foco stated was "normal behavior for him." SUMF, ¶ 31.

As a result of the continued complaints regarding Keyworth's lack of availability to his coworkers, the concerning reports that he was sleeping on the job, and his failure to meet expectations on sales metrics, Hall and Joyce communicated with Keyworth, on multiple occasions, to coach him on his performance. SUMF, ¶ 32. On or about June 15, 2018, Hall and Joyce met with Keyworth and explained that his lack of availability to his team during his shift was having a negative impact on his peers and team and was unacceptable. SUMF, ¶ 33. Specifically, Hall and Joyce informed Keyworth it was unacceptable to not answer his phone, forward calls to other managers and customer service, take long lunches and not be available. SUMF, ¶ 34. Hall and Joyce also discussed several performance metrics which were lacking and the expectations for those metrics. SUMF, ¶ 35. During this meeting, Keyworth informed Hall and Joyce that he was struggling with depression.  SUMF, ¶ 36.  Hall and Joyce explained that Lowe's would continue to accommodate his medical needs.  *Id*.

Despite the repeated coaching, Keyworth's performance did not improve. On June 29, 2018, employee Alicia Kruse emailed Hall that she had observed Keyworth walking into a liquor store during what she assumed was his lunch break. SUMF, ¶ 37. She reported smelling alcohol

on Keyworth when he returned. SUMF, ¶ 38. A month later, on July 29, 2018, employee McMenus emailed Hall and Joyce at 1:23 p.m. to report that store employees had been "looking for Jonathan [Keyworth] since about 9:30 this morning with not [sic] luck[.]" SUMF, ¶ 39. Keyworth was scheduled to work that day from 7:00 a.m. to 6:00 p.m.  SUMF, ¶ 40.  McMenus followed up hours later at 6:30 p.m. to report he did not see Keyworth "once today." SUMF, ¶ 41.

The next day, Hall substantiated the employee complaints management had been receiving when he discovered Keyworth in a dark office watching a movie. SUMF, ¶¶ 42-46. On that day, Keyworth returned from his lunch break at 5:36 p.m.  SUMF, ¶ 42. At 5:52 p.m. Hall began searching for Keyworth on the sales floor. SUMF, ¶ 43. At approximately 6:05 p.m., Hall found Keyworth in an office, "shoes off, feet up in the dark watching a movie." *Id.* Hall asked Keyworth if he "knew this was a bad look for him" and Keyworth responded "yup." Hall then sent Keyworth home for the day. SUMF, ¶ 45. The following day Keyworth called off of work indicating he was sick. SUMF, ¶ 46.

On August 16, 2018, human resources received another complaint from Kruse regarding Keyworth. SUMF, ¶ 47. Kruse reported that she approached Keyworth to obtain his assistance in overriding an order and saw that Keyworth was viewing women "with minimal clothing posing with army gear and holding guns" on his computer screen. *Id*. She reported that his cell phone screen showed a gambling game. *Id*. This behavior did not show that Keyworth was taking seriously the coaching he received from management regarding the need that he be available for his team.

**B.  Keyworth Files "Unsubstantiated" Internal Complaint After Not Being Selected for ASM Position in a Different Market.**

After being transferred to the Arvada store, Keyworth applied for several ASM positions in other stores, but was never selected. SUMF, ¶ 48. Specifically, on or about January 12, 2018, Keyworth applied for an ASM position in "Store 1755." *Id*. Keyworth also applied for an ASM position in "Store 2780" three times between mid-May and July, 2018. *Id*. In all instances, Keyworth was not selected for what would have been a transfer to an ASM position in a different market. *Id*.

Keyworth interviewed with the Store Manager of Store 2780, Jonathan Glassburn, at the end of May 2018. SUMF, ¶ 49. Several days after the interview, on May 30, 2018, Keyworth made an EEOC inquiry. SUMF, ¶ 50. Keyworth testified he made the inquiry because he felt that Store 2780 had discriminated against him when Glassburn told Keyworth during the interview that he was going to follow up with him the next day, and then did not. SUMF, ¶ 50. Keyworth testified that Glassburn did not talk to him until a week later and then reposted the ASM position. *Id.* On June 12, 2018, after seeing that the Store 2780 ASM position had been reposted, Keyworth emailed Glassburn to tell him he wanted to transfer to his store. SUMF, ¶ 53. On June 15, 2018, in a meeting to address concerns they had with Keyworth's performance, Hall and Joyce explained to Keyworth that because of his performance in the Arvada store, during regional visits, and at the ASM Sales Summit, he did not have the sponsorship of the market to transfer to Store 2780. SUMF, ¶ 53.

On June 21, 2018, Keyworth utilized Lowe's internal reporting service and complained that: (1) he waited a week to learn he did not receive the ASM position that he interviewed for in late-May; (2) he was unable to reapply for the ASM position and had not received a response from his June 12th email; and (3) he felt "discriminated against." SUMF, ¶ 54. Keyworth did not

specify why he thought Lowe's had discriminated against him or on what basis he believed Lowe's had discriminated against him. SUMF, ¶ 55.

Employee Relations investigated Keyworth's complaint against Store 2780.  SUMF, ¶ 57.  After investigation, Lowe's Employee Relations determined that Store 2780 was unable to offer Keyworth the ASM position he had applied for because Keyworth did not have market-level support for the transfer due to his performance in his current store. *Id*. As such, Employee Relations determined that Store 2780 did not discriminate against Keyworth by not selecting him for the ASM position, and Keyworth's claims were unsubstantiated. SUMF, ¶ 58.

### C.  Keyworth is Placed on Performance Improvement Plan and Does Not Meet Expectations.

After repeated informal coaching attempts to improve Keyworth's behavior and performance were unsuccessful, Lowe's placed Keyworth on a performance improvement plan. The performance improvement plan was delivered to Keyworth on August 17, 2018 (the "PIP"). SUMF, ¶ 59. The PIP set forth performance expectations for Keyworth, how those performance expectations would be measured, and the support available to Keyworth to help him meet expectations. *Id*. Lowe's tasked Keyworth with developing an action plan to meet performance expectations. SUMF, ¶ 60.  The PIP made clear that failure to meet performance expectations while on the PIP could result in termination. SUMF, ¶ 61. On August 23, 2018, Keyworth submitted his action plan, as pictured below:

| Performance Expectations<br>*(What needs to be achieved?)* | Measures of Success /<br>Required Outcomes<br>*(How are the required outcomes going to be measured?)* | Available Support<br>*(What development / learning activities and/or resources, including specific support from the manager, are available to assist the employee in meeting performance expectations?)* | Action Plan<br>*(How is this outcome going to be achieved?)* |
|---|---|---|---|
| *Manager to complete prior to initial discussion with employee. HR (AHRM) to review / provide feedback.* | *Manager to complete prior to initial discussion with employee. HR (AHRM) to review / provide feedback.* | *Manager to complete prior to initial discussion with employee. HR (AHRM) to review / provide feedback.* | *Employee to complete within 1 week following initial discussion and re-connect with manager to review/finalize* |
| 1 Building stronger rapport and development of Sales Specialist, Pro Customers, and Peers. Meaningful connections, listening intently, sense and respond. | -Employee Feedback<br>-Sync Up Conversations<br>-One on One with SM<br>-Improved individual performance<br>-Monitoring IMS and WIRE<br>-Work Lists<br>-PBM<br>-PSE/PSI, Pro, and Specialty results<br>-Store Vital Stats | -Store Manager Support<br>-Peer Support<br>-HR Manager Support<br>-Market Level Support<br>-LTC<br>-Connections | This performance will have a positive outcome achieved by continuing to support pro. having more frequent specialist meetings and supporting the management staff. |
| 2 Communication-leadership providing clear direction, delegation, and consistent follow up to both subordinates and peers that aligns with the goals and success of the store. Being available and accessible to associates, while maintaining a positive and professional attitude. | -Sync Up Conversations<br>-Department Walks<br>-One on One with SM<br>-Employee Feedback<br>-Improved individual performance<br>-Work Lists<br>-Monitoring IMS and WIRE<br>-PBM<br>-PSE/PSI, Pro, and Specialty results<br>-Store Vital Stats | - Store Manager Support<br>- Peer Support<br>- HR Manager Support<br>-Market Level Support<br>-Connections | This performance will have a positive outcome achieved by supporting the management team and holding associates accountable for their actions. |

SUMF, ¶¶ 59-61.

Despite the PIP and continued performance coaching, Keyworth did not change his behaviors.  On August 26, 2018, Keyworth texted a coworker Steve Turano in a string including McMenus and Joyce.  SUMF, ¶ 62.  Keyworth demanded Turano come into work.  *Id.*  Turano, who had called off work, responded that he was "not feeling good at all" and that he had called off as he was "having major stomach issues."  SUMF, ¶ 63.  In response, Keyworth responded, "Well Vince said you have not talked to him and told Doug last night.  If your [sic] in that much pain we will need a note from the ER. Otherwise I will see you in 20 minutes." SUMF, ¶ 64.  Turano reported that he felt threatened by the text messages from Keyworth. SUMF, ¶ 65. The next day, on August 27, 2018, employee Janette Chavez texted Hall and reported that Keyworth smelled of alcohol, was acting strange, and unavailable when the team needed a manager.  SUMF, ¶ 66.

On or about September 1, 2018, Hall met with Keyworth to discuss his progress on his action plan. SUMF, ¶ 67. Hall informed Keyworth that he had not met expectations during the period August 24, 2018 through August 31, 2018. *Id*. During that time period, Keyworth had locked the lumber department doors nearly an hour before closing, locking a customer inside the building. SUMF, ¶ 68. And, management also received unsolicited feedback that staff had a difficult time contacting or locating Keyworth in the store when they needed him. SUMF, ¶ 69. During the same time period, Keyworth had not met expectations on all performance metrics, specifically Keyworth's development of leads for interior and exterior specialists and expectations related to pro sales. SUMF, ¶ 70. Pro sales are sales made to contractors who use a Lowe's pro credit card, a special card used for corporate purchases. *Id*.

On September 7, 2018, after Joyce received a call for an override that Keyworth could have handled had he been available, Joyce and Hall searched for Keyworth. SUMF, ¶ 71. Joyce and Hall looked inside the tool display storage closet, where Joyce had heard someone had been hiding. *Id*. A bungie cord had been hooked over the lever to draw the door shut, and Keyworth was in the closet, crying. SUMF, ¶ 72. Hall asked Keyworth to meet him in his office. SUMF, ¶ 73.

While in Hall's office, Keyworth told Hall, "[i]f [Hall was] going to fire him, then fire him" and that with respect to Lowe's his head was "gone." SUMF, ¶ 72. Hall told him to go to lunch and that they would talk when he returned. SUMF, ¶ 74. Keyworth did not return to work that day. SUMF, ¶ 75.

On September 10, 2018, Keyworth arrived to work at 8:22 a.m., despite being scheduled to arrive at 7:00 a.m. SUMF, ¶ 76. Joyce and Hall met with him at 8:45 a.m. to obtain a

statement from him regarding being found in the tool display closet on September 7th.  *Id*.

Keyworth refused to provide a statement.  SUMF, ¶ 77.

Hall next provided Keyworth feedback on his progress on the PIP.  Hall told Keyworth

that he had not connected with his team in a meaningful way or exhibited expected leadership

behaviors. SUMF, ¶ 78. Hall also provided feedback that Keyworth's peers had continued to

provide unsolicited feedback which demonstrated "little to no improvement" in Keyworth's

"attitude and demeanor" and that he continued to be unavailable for his team members.  *Id*.

Keyworth refused to provide any statements related to the PIP.  SUMF, ¶ 79.

On September 12, 2018, Keyworth was discharged for failure to show immediate and

sustained improvement as outlined in the PIP.  SUMF, ¶ 80. This suit followed.

## III.    LEGAL FRAMEWORK

Where the plaintiff relies on circumstantial instead of direct evidence, as Keyworth does

here, the Court applies the analytical framework first articulated in *McDonnell-Douglas Corp. v.*

*Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed 2d 668 1973).  *Dewitt v. S.W. Bell Tel. Co*., 845

F.3d 1299, 1307 (10th Cir. 2017); *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997).

The *McDonnel-Douglas Corp*. burden shifting framework involves three steps: (1) the plaintiff

must establish a prima facie case of discrimination or retaliation; (2) if the plaintiff satisfies this

initial burden, the defendant employer must offer a legitimate, non-discriminatory reason for the

adverse employment action, and (3) the burden then shifts back to the plaintiff who must show

the employer's proffered legitimate reason is pretextual.  *Dewitt*, 845 F.3d 1299 (citing

*McDonnell-Douglas Corp*, 411 U.S. at 802). To avoid summary judgment, the plaintiff initially

must raise a genuine issue of material fact on each element of a prima facie case.  *Mawson v.*

*U.S. W. Bus Resources, Inc.*, 23 F. Supp. 2d 1204, 1213 (D. Colo. 1989); Fed. R. Civ. P. 56(a),

(c). And, once the defendant shows a legitimate, nondiscriminatory reason for the employment

actions being challenged, the plaintiff must again show a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is unworthy of belief. *Id*. (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)). "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id*. (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)) (internal quotations omitted).

## IV.    ARGUMENT

### A.  Keyworth Cannot Establish a Prima Facie Case of Discrimination.

Keyworth cannot carry his burden of establishing a prima facie case of discrimination based on disability because the undisputed facts show no inference that the discharge was based on his lung disease or PTSD. To make out a prima facie case for discrimination based on disability, Keyworth must show that he: "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Dewitt*, 845 F.3d at 1308 (citing *E.E.O.C. v. C.R. Eng., Inc.,* 644 F.3d 1028, 1037-38 (10th Cir. 2011)). The burden in step one of the *McDonnell Douglas* framework is not onerous, but it also is not empty or perfunctory. *Morgan*, 108 F.3d at 1324. Keyworth cannot establish the third prong, because he cannot present evidence that his disability was a determining factor in the employer's decision to discharge him, or to not select him for an ASM positions in another market. Keyworth's poor performance, specifically, his unavailability to his team, was the operative factor in Lowe's decisions, not Keyworth's disabilities.

Keyworth alleges that Lowe's discriminated against him when Store 340 Manager Glassburn waited a week to inform him that he did not receive the ASM position in his store. SUMF, ¶ 51. Keyworth baldly speculates that Glassburn did not give him the job "because of

[his] disabilities," but can point to no established facts to support that conclusion. SUMF, ¶ 51.

In fact, Keyworth has never articulated any rationale for his *feeling* that Store 340 did not offer

him the position because he had a disability.  When Keyworth lodged an internal complaint

alleging discrimination he merely recited that: (1) he did not receive the position he wanted; (2)

could not reapply for the position when reposted; and (3) could not get in contact with Glassburn

regarding the posting.  SUMF, ¶ 54.  He then stated, "I have got to say that I really feel

discriminated against." SUMF, ¶ 54.  When he wrote the June 21st complaint and submitted it by

email, Keyworth was not even sure on what basis Lowe's was allegedly discriminating against

him.  He testified in his deposition:

> Q.      How were you being discriminated against?
>
> A.      Against my age, my disabilities.  I don't know.  I just felt
> something was wrong, and I am using the open door policy to get
> an answer.

SUMF, ¶ 55.  A mere feeling that something was wrong does not amount to affirmative evidence

that disability was a determining factor in the decision to not hire Keyworth for a different ASM

position.  *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa County, Okla*., 232 Fed. Appx. 765, 770

(10th Cir. 2007)(unpublished) (citing *Morgan*, 108 F.3d at 1323-24).

Keyworth also alleges that Lowes discriminated against him by terminating him on

September 12, 2010 because of his disabilities. However, Keyworth again cannot establish an

inference of actionable discriminatory animus. The undisputed facts demonstrate no "nexus"

between the employee's decision and discriminatory motive. *Vinez v. Sky Chefs, Inc*., 658 Fed.

Appx. 390, 394 (10th Cir. 2016)(unpublished) (citing *Barlow v. C.R. England, Inc.*, 703 F.3d

497, 505 (10th Cir. 2012). Keyworth suggests that the discharge must have been discriminatory

because it occurred five days after he was found in a storage closet crying by managers Hall and

Joyce on September 7, 2018.  *See* SUMF, ¶¶ 71-80. That fact does not amount to evidence that Keyworth's disability (whether PTSD or lung disease) was a factor in the decision to discharge him.  By September 7th, there had been numerous reports of Keyworth sleeping in offices while at work and Hall had witnessed him watching a movie in a dark room when he was supposed to be working.  SUMF, ¶¶ 3-8; 21-31; 37-47.  Moreover, before his discharge Keyworth never asserted that he was hiding in the storage closet because of his PTSD.  In fact, when asked to provide a statement on September 10, 2018, he refused.  SUMF, ¶¶ 78-79; *Dewitt*, 845 F.3d at 1314 (employer's request that employee provide explanation for his "side of the store defeats any inference of an unfair investigation.")

Additionally, the record shows that upon request Lowe's worked to accommodate Keyworth's disability, rather than discriminate against Keyworth because of his disability as Keyworth alleges.  Keyworth applied for and received a leave of absence.  SUMF, ¶¶ 13-14. And, when he returned, Keyworth was granted a workplace accommodation, which allowed him to take breaks from standing or walking. SUMF, ¶¶ 14-16.

Keyworth cannot show there is a genuine dispute of material fact on the element of whether he suffered discrimination by an employer or prospective employer because of that disability, and as such cannot establish a prima facie case of discrimination.

**B.  Lowe's Had a Legitimate, Non-Discriminatory Basis for Its Decisions and the Decision was Not Pretextual.**

Assuming arguendo that Keyworth can establish a prima facie case of discrimination, the record clearly demonstrates Lowe's had a legitimate, non-discriminatory basis for not selecting Keyworth for a different ASM position and for later discharging Keyworth.  Both decisions were based on Keyworth's below-par performance and the numerous, corroborated complaints that he was sleeping and watching movies when he should have been available to his team.

As detailed above, from January 2018 (shortly after Keyworth started at the Arvada store) to August 2018, human resources and management received consistent complaints, both verbal and written, regarding Keyworth's performance and behavior.  Specifically, coworkers consistently complained that Keyworth was unavailable to them and even sleeping on the job. SUMF, ¶¶ 3-8; 21-31; 37-47; 68-69. Human resources and management met with Keyworth on a regular basis to discuss his performance deficiencies and to coach him to improve his behavior. SUMF, ¶ 32. In June 2018, Joyce and Hall specifically told Keyworth that it was unacceptable behavior to not answer his phone, forward calls to other managers and customer service, take long lunches and generally not be available when he should be working.  SUMF, ¶ 34.  In addition to not being available to his team, sleeping at work and exhibiting odd behaviors, Keyworth also struggled to meet performance metrics and presented poorly at the ASM Sales Summit held in February 2018. SUMF, ¶¶ 18, 20, 35, 53, 70. Despite, the coaching Keyworth chose not to improve his performance.

As a result of his continued poor job performance, Lowe's put Keyworth on the PIP. SUMF, ¶ 59. In initiating the PIP, Lowe's informed Keyworth of his performance expectancies and how success of those expectancies would be measured. *Id*. Keyworth's performance still did not improve.  While on the PIP, Keyworth locked the lumber department doors nearly an hour before the store closed, was unavailable to his team members and continued to not meet expectations on sales performance metrics.  SUMF, ¶¶ 67-70. And, on September 7, 2018, he was again found in another location where he had no reason to be in during working hours, and then left the store for lunch and did not return for the remainder of his shift.  SUMF, ¶¶ 71-75. Keyworth's poor job performance was a non-discriminatory business reason for not transferring Keyworth to a different ASM position and for discharging Keyworth.  *Oglesby v. Hy-Vee, Inc.*,

214 Fed. Appx. 829, 834 (10th Cir. 2007)(unpublished) (parties agree that sleeping on the job is a legitimate nondiscriminatory reason for terminating an employee); *Nealey v. Water Dist. No. 1 of Johnson County*, 324 Fed. Appx. 744, 748 (10th Cir. 2009)(unpublished) (same).  The burden therefore shifts back to Keyworth to demonstrate that Lowe's stated reasons are pretextual, which he cannot do.

In evaluating whether a decision was pretextual, the Court's role is not to "ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on that belief."  *Dewitt*, 845 F.3d at 1307 (internal quotations omitted).  "Evidence that the employer should not have made the termination decision — for example, that the employer was mistaken or used poor business judgment — is not sufficient to show that the employer's explanation is unworthy of credibility."  *Dewitt*, 845 F.3d at 1307 (citing *Simmons v. Sykes Enters, Inc.*, 647 F.3d 943, 948 (10th Cir. 2011) (internal quotations omitted).  The Court's role is to prevent intentional discriminatory practices, its role is not to "acts as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments."  *Dewitt*, 845 F.3d at 1307.

The undisputed facts demonstrate that Lowe's decisions were not pretextual.  Beginning in January 2018, Lowe's management and human resources received consistent complaints from Keyworth's coworkers that he was unavailable and sleeping on the job.  SUMF, ¶¶ 3-8; 21-31; 37-47; 68-69. Lowe's decision to not transfer an employee who was not meeting expectations in his current role is not "unworthy of belief."  As Joyce and Hall explained to Keyworth in June, 2018, Keyworth's performance in the Arvada store, specifically his poor performance with Regional visits, ASM Sales Summit, ASM evaluations, and work performance stopped the market from sponsoring or recommending him for a transfer.  SUMF, ¶ 53.

When Keyworth did not improve to a level of expected performance, even after being placed on a PIP, Lowe's discharged him, a decision which is certainly not "unworthy of belief." Lowe's specifically put Keyworth on notice that his behavior of not answering his phone, not being available to coworkers and sleeping on the job was unacceptable.  SUMF ¶ 34. And yet, he continued to exhibit such behaviors.  Keyworth cannot present evidence such that a reasonable jury could find pretext.  As such, the Court should grant Lowe's summary judgment on the disability discrimination claim.

### C.  Keyworth Cannot Demonstrate a Causal Connection Between the Employee's Action and the Employer's Adverse Action, Nor Can He Demonstrate Lowe's Legitimate Reason for Discharge was Pretext for Retaliation.

To establish a prima facie case of retaliation, a plaintiff must show (1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action.  *Morgan,* 108 F.3d at 1324.  Where, as here, there is no direct evidence of retaliatory motive, the *McDonnel Douglas* framework applies.  Keyworth cannot show there is any disputed fact on the element of causation to meet his burden of establishing a prima facie case of retaliation.

Keyworth alleges that Lowe's discharged him because he complained about discrimination and retaliation. A retaliatory motive may be inferred when an adverse action closely follows protected activity. However, "unless the adverse action is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Hysten v. Burlington N. and Santa Fe Ry. Co*., 296 F.3d 1177, 1184 (10th Cir. 2002) (emphasis in original). In *Hysten*, adverse employment action occurring three months after the protected activity was insufficient to establish retaliatory intent by temporal proximity alone.  *Id*. Keyworth alleges that he engaged in protected activity when he

complained that he was being accused of inaccurate behaviors because of his disabilities in January, 2018 and that he complained he was being discriminated against on June 21, 2018. Keyworth was discharged nearly nine months after his alleged initial complaint, and two and a half months after his June 21, 2018 complaint. *See* SUMF, ¶ 11-12; 54; 80. Similar to *Hysten*, Keyworth cannot rely on merely temporal proximity to satisfy the third element of a prima facie case of retaliation. Keyworth must therefore support his claim with additional evidence, of which there is none.

Nothing in the record suggests that Lowe's discharged Keyworth because he complained about discrimination. To the contrary, the evidence shows that Lowe's worked to support Keyworth and accommodated his disabilities. In January, 2018, in response to inquiry regarding his odd behaviors (slurring speech, smelling of alcohol, etc), Keyworth informed human resources that he was taking medication which may make him appear intoxicated and that he chewed nicotine gum, which may smell like alcohol. SUMF, ¶ 11. Human resources offered Keyworth resources for assistance or treatment, and Keyworth declined. SUMF, ¶ 12. Keyworth remained employed as an ASM. Shortly after the January 2018 discussion, Lowe's granted Keyworth a leave of absence and a workplace accommodation related to his lung disease. SUMF, ¶¶ 13-16.

Keyworth engaged in a protected activity on June 21, 2018, when he filed an internal complaint sating that he felt discriminated against by "Market 1284" (where "Store 2780" is located) after he was not selected for an ASM position in that market. SUMF, ¶ 54. Again, Keyworth cannot show that Lowe's non-discriminatory, legitimate reason for discharge (employee's poor performance including multiple allegations of sleeping at work), was pretext for retaliation for Keyworth engaging in protected activity. Keyworth was made aware that his

performance was not meeting expectations well in advance of him lodging an internal complaint regarding discrimination.  Approximately a week before Keyworth lodged his internal complaint, Hall and Joyce met with him to address coworker's complaints that Keyworth was not available, and Keyworth's sales performance.  SUMF, ¶¶ 33-35.  Specifically, Hall and Joyce informed Keyworth that his current behavior at work was unacceptable, but gave him an opportunity to improve his performance. *Id*.

Keyworth's discharge was a result of his continued poor performance.  After he lodged his internal complaint: (1) an employee complained that she observed Keyworth entering a liquor store on his lunch break and that he smelled of alcohol when he returned (SUMF ¶ 37); (2) a fellow-ASM reported that no one could locate Keyworth for his scheduled shift on July 29, 2018 (SUMF, ¶ 39-40); (3) store manager Hall found him in a dark office watching a movie (SUMF, ¶ 43-45); (4) an employee complained that while at work, Keyworth was viewing photos of women with minimal clothing and playing a gambling game on his phone (SUMF, ¶47) Keyworth sent text messages to an employee demanding he come into work, despite the employee reporting that he was sick (SUMF, ¶ 62-65), (6) an employee complained the Keyworth smelled of alcohol, was acting strange and was unavailable (SUMF, ¶ 66); (7) Keyworth locked the lumber doors approximately an hour before closing, locking a customer in the store (SUMF, ¶ 68); (8) Keyworth's performance on sales metrics did not meet expectations (SUMF, ¶ 70) and (9) Keyworth was found in a storage closet, which he had fastened shut with a bungie cord and then refused to provide management with a statement as to why he was in the closet (SUMF, ¶¶ 70-74). Certainly, it is not unworthy of belief that Lowe's would discharge an employee as a result of the described performance issues.  *See Mawson*, 23 F. Supp. 2d at 1215 (issue of pretext is also integral to claim for retaliation and failure to create genuine dispute as to

the trustworthiness of the employer's proffered reasons for discharge provides an independent basis to grant employer summary judgment); *Morgan* 108 F.3d at 1324 (no pretext for retaliation when employer warned employee about poor attendance before and after the employee filed charge and discrimination).

In sum, Keyworth cannot establish a prima facie case of retaliation because he cannot establish a causal connection between his internal complaints regarding discrimination and his discharge. Lowe's had a non-discriminatory reason for discharging Keyworth based on his performance, which was not pretextual or unworthy of belief.

## V.   CONCLUSION

For the foregoing reasons, this Court should grant Lowe's summary judgment on Keyworth's Complaint.

Respectfully Submitted this September 10, 2020.

/s/ Steven M. Gutierrez
Steven M. Gutierrez
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO  80202
303-295-8531
sgutierrez@hollandhart.com

**Attorneys for Defendant
Lowe's Companies, Inc.**

19

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Steven M. Gutierrez*

15183995_v2